Dated: 3/24/2015

Marian F. Harrison
US Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| IN RE: | ) |
| | ) CASE NO. 313-05719 |
| ALAN LEE SCHWARTZ, | ) |
| | ) JUDGE MARIAN F. HARRISON |
| Debtor. | ) |
| | ) Chapter 7 |
| | ) |
| THE ACCOUNTING/TAX PROS, LLC, | ) ADV. NO. 313-90369 |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ALAN LEE SCHWARTZ, | ) |
| | ) |
| Defendant. | ) |

_____

## MEMORANDUM OPINION
_____

The plaintiff filed the above-styled adversary complaint to determine whether its claim against the debtor is non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A), (a)(4), and/or (a)(6). For the following reasons, which represent the Court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a)(1), as incorporated by Fed. R. Bankr. P. 7052, the Court finds that the complaint should be denied.

# I. FACTS

On July 1, 2005, the plaintiff (formed by Donna and Bill Hardy, with Ms. Hardy being the managing member and majority owner) and the debtor entered into a written "Asset Purchase Agreement" (hereinafter the "Asset Purchase Agreement"). Pursuant to the Asset Purchase Agreement, the debtor agreed to sell all of the assets comprising a business known as "Jackson Hewitt Tax Service" (hereinafter "Jackson Hewitt") to the plaintiff for a purchase price of $43,000 with a down payment of $5000 that was paid at closing.

The plaintiff also provided the debtor at closing with a "Promissory Note and Security Agreement" (hereinafter "Promissory Note"), dated July 1, 2005, in the original principal amount of $38,000. The Promissory Note specified that the plaintiff would pay the debtor six yearly payments of $7,546.63 beginning May 1, 2006. The plaintiff made the following payments to the debtor:

        May 2, 2006 - $7,546.63.

        May 14, 2007 - $7,460.00.

        July 25, 2007 - $150.00.

        April 28, 2008 - $7,546.63.

On March 27, 2007, Ms. Hardy was indicted on twelve counts of Bank Fraud under 18 U.S.C. § 1344 and five counts of Tax Evasion under 26 U.S.C. § 7201 in the U.S. District Court for the Western District of Tennessee. On October 29, 2007, an Order on Jury Verdict

was entered by the U.S. District Court, convicting Ms. Hardy of all 17 counts set forth in the Indictment.

Based on Ms. Hardy's convictions, the debtor states that he believed the plaintiff was no longer eligible under the franchise agreement with Jackson Hewitt, and thus, the plaintiff was in breach of the Asset Purchase Agreement between the plaintiff and the debtor. Accordingly, the debtor sent the plaintiff a "Notice of Termination," indicating his intent to terminate the Asset Purchase Agreement, effective August 25, 2008. On November 20, 2008, the debtor entered into a "Management/Purchase Agreement" (hereinafter "Subsequent Purchase Agreement") with Tax Professionals of America, Inc. (hereinafter "Tax Professionals"), whereby the debtor sold the same assets to Tax Professionals for $106,125.

On March 25, 2009, the plaintiff filed a lawsuit against the debtor in the Circuit Court of Gibson County, Tennessee. In the lawsuit, the plaintiff alleged, among other things, a cause of action for conversion, breach of contract, fraud, and civil conspiracy. In his answer to the lawsuit, the debtor asserted that the plaintiff failed to comply with the terms of the Asset Purchase Agreement, which he contends required the plaintiff to comply with the terms of a Jackson Hewitt franchise agreement. Specifically, the debtor argued that because Ms. Hardy was convicted on October 29, 2007, of bank fraud and tax evasion, the plaintiff became ineligible under the franchise agreement and breached the Asset Purchase Agreement.

At the May 31, 2013, trial of the state court lawsuit, the jury determined as follows:

THE COURT: All right. The answer to the first question was there a contract, the answer was, yes. That's number one. Number two, did accounting tax pros [sic] do all or substantially all significant things that the contract required it to do, no. Was accounting tax pros excused, yes. Did Alan Schwartz fail to do something the contract required him to do, yes. Was accounting tax pros [sic] harmed, yes. What if any are the accounting tax pros [sic] damages, $150,000. Is that the verdict of the jury?

THE JURY: Yes.

At a subsequent hearing conducted on December 30, 2013, the state court confirmed the jury award of $150,000 to the plaintiff plus pre-judgment interest at a rate of 5% from August 25, 2008, to May 31, 2013, totaling $15,625, attorney's fees totaling $19,040, and costs in the amount of $1,700.

The debtor filed his Chapter 7 petition on July 1, 2013, and the plaintiff filed this adversary on September 27, 2013, asserting that its claim in the amount of $186,365 plus attorney fees and expenses is non-dischargeable under 11 U.S.C. §§ 523(a)(2)(A), (a)(4) and/or (a)(6).

## II. DISCUSSION

### A. DISCHARGEABILITY

Generally, exceptions to discharge are to be construed strictly against the creditor. *Gleason v. Thaw*, 236 U.S. 558, 562 (1915). The burden of proof falls upon the party objecting to discharge to prove by a preponderance of the evidence that a particular debt is nondischargeable. *Grogan v. Garner*, 498 U.S. 279, 291 (1991).

### B. 11 U.S.C. § 523(a)(2)(A)

The plaintiff contends that the debt is non-dischargeable under 11 U.S.C. § 523(a)(2)(A) because the debtor acted with fraudulent intent in the taking of its assets and re-selling them and that the debtor's indebtedness is a direct result of his false representations and actual fraud. Despite having sold the assets to the plaintiff for $43,000, the plaintiff asserts that the debtor deliberately, intentionally, and in contravention of the terms of the Purchase Asset Agreement, subsequently resold the same assets to a third party for $106,125.

The debtor asserts that based on his interpretation of the contract, the ownership of the business did not transfer to the plaintiff until the final payment was made under the Asset Purchase Agreement. The debtor believed that he was still the owner of the business, but allowed the plaintiff to manage the business and keep the profits. Therefore, the debtor asserts that he made no false statements upon which the plaintiff relied and that he lacked the requisite intent to deceive.

Section 523(a)(2)(A) denies discharge of a debt:

> for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
>
> > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

The Sixth Circuit has held that in order to except a debt from discharge under 11 U.S.C. § 523(a)(2)(A), a creditor must prove the following elements:

> (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

***Rembert v. AT & T Universal Card Servs., Inc. (In re Rembert),*** 141 F.3d 277, 280-81 (6th Cir. 1998) (citation omitted). Under ***Rembert***, intent is measured subjectively. ***Id.*** at 281. "[A] debtor's intent to deceive a creditor occurs when the debtor makes a false representation which the debtor knows or should have known would induce another to advance money, goods or services to the debtor." ***Bernard Lumber Co. v. Patrick (In re Patrick),*** 265 B.R. 913, 916 (Bankr. N.D. Ohio 2001) (citation omitted). An intent to deceive may be inferred from a "'[r]eckless disregard for the truth or falsity of a statement combined with the sheer magnitude of the resultant misrepresentation.'" ***Haney v. Copeland (In re Copeland)***, 291 B.R. 740, 786 (Bankr. E.D. Tenn. 2003) (citation omitted). Nonetheless, "'[i]f there is room for an inference of honest intent, the question of non-dischargeability must be resolved in

favor of the debtor.'" *Star Banc Fin. v. Bird (In re Bird),* 224 B.R. 622, 627 (S.D. Ohio 1998) (citations omitted).

In the present case, the Court has struggled over the central issue of whether the debtor had the requisite fraudulent intent. Neither the parties nor the other witnesses were particularly credible, making this decision even more difficult. It is possible to understand how the debtor could have misinterpreted the poorly written Asset Purchase Agreement to mean that he was not relinquishing the franchise until all conditions had been met, and at the time of the taking, the debtor's name was on the business account and the franchise agreement with Jackson Hewitt was still in his name. Moreover, Ms. Hardy, the plaintiff's principal, had been convicted of several counts of bank fraud and tax evasion, crimes that would preclude the plaintiff from being approved to take over the franchise as long as Ms. Hardy was a principal. On the other hand, there were discrepancies on the debtor's income tax returns regarding whether this was a sale, and more importantly, the debtor sold and/or disposed of some property that was not part of the original Asset Purchase Agreement. If it were possible to determine the amount of assets that did not have the debtor's name on them or that were not part of the original transaction, the Court would consider a determination that the dollar amount of the assets falling in the category of original assets was dischargeable and the dollar amount of assets falling outside the category of original assets was non-dischargeable. Unfortunately, the jury verdict did not do so, nor was there sufficient proof at the hearing in this Court to make such a determination. Regardless, as

stated earlier, exceptions to discharge are to be strictly construed, and the burden is on the creditor to show all elements of non-dischargeability by a preponderance of the evidence. In this case, albeit somewhat reluctantly, the Court finds that the plaintiff has not met its burden on the issue of intent.

### C. 11 U.S.C. § 523(a)(4)

The plaintiff next asserts that the debt is non-dischargeable under 11 U.S.C. § 523(a)(4). 11 U.S.C. § 523(a)(4) provides that a discharge can be denied for a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." Section 523(a)(4) creates two distinct exceptions to discharge: (1) fraud or defalcation while acting in a fiduciary capacity, and (2) embezzlement or larceny whether or not acting in a fiduciary capacity. *Gribble v. Carlton (In re Carlton)*, 26 B.R. 202, 205 (Bankr. M.D. Tenn. 1982).

"The phrase 'while acting in a fiduciary capacity' applies only to the words 'fraud or defalcation'; embezzlement and larceny are separate grounds for non-dischargeability under § 523(a)(4) whether or not a fiduciary relationship existed." *Kilns v. Pierron (In re Pierron),* 448 B.R. 228, 240 (Bankr. S.D. Ohio 2011) (citation omitted). Accordingly, "a plaintiff can prevail under § 523(a)(4) by establishing that the [debtor] committed either (1) fraud or defalcation while acting in a fiduciary capacity, or (2) embezzlement, or (3) larceny." *Id.*

Here, the plaintiff asserts larceny. Larceny under 11 U.S.C. § 523(a)(4) is defined and determined according to federal law. *Graffice v. Grim (In re Grim),* 293 B.R. 156, 166 (Bankr. N.D. Ohio 2003) (citation omitted). For purposes of 11 U.S.C. § 523(a)(4):

> [L]arceny can be defined as the actual or constructive taking away of property of another without the consent and against the will of the owner or possessor with the intent to convert the property to the use of someone other than the owner. Larceny for purposes of § 523(a)(4) requires proof that the debtor wrongfully and with fraudulent intent took property from its rightful owner. As distinguished from embezzlement, the original taking of the property must be unlawful. Larceny is commonly understood to be synonymous with theft. For example, larceny occurs when a thief breaks into a home and steals jewelry for the purpose of converting it to cash for his/her own use.

*Morganroth & Morganroth, PLLC v. Stollman (In re Stollman),* 404 B.R. 244, 271 (Bankr. E.D. Mich. 2009) (citation omitted). "Larceny under § 523(a)(4) is proved if the debtor wrongfully and with fraudulent intent takes property from its rightful owner." *Tomblin v. Robbins (In re Robbins)*, No. 06–3067, 2007 WL 1174334, at *9 (Bankr. E.D. Tenn. Apr. 19, 2007) (citations omitted).

In the present case, a state court jury has already found that the debtor breached the contract without excuse, and the proof showed that the debtor personally benefitted from reselling the property at a profit. The real issue is whether the debtor took the property with fraudulent intent. A debtor's intent is assessed from his subjective point of view, taking into account the totality of the circumstances, and determining "whether all the evidence leads to the conclusion that it is more probable than not that the debtor had the requisite fraudulent intent." *See In re Rembert*, 141 F.3d 277, 282 (citations and internal quotations omitted).

As discussed above, the Court finds that the proof "leave[s] room for an inference of honest intent" on the part of the debtor. *See In re Bird,* 224 B.R. 622, 627.

### D. **11 U.S.C. § 523(a)(6)**

Pursuant to 11 U.S.C. § 523(a)(6), a debt is nondischargeable when the debt is "for willful and malicious injury by the debtor to another entity or to the property of another entity." In ***Markowitz v. Campbell (In re Markowitz)***, 190 F.3d 455 (6th Cir. 1999), the Sixth Circuit expounded on the decision in ***Kawaauhau v. Geiger***, 523 U.S. 57 (1998), stating that "unless 'the actor desires to cause consequences of his act, or . . . believes that the consequences are substantially certain to result from it,' [the debtor] has not committed a 'willful and malicious injury' as defined under § 523(a)(6)." *Id.* at 464 (internal citations omitted).

To prevail under § 523(a)(6), the plaintiff must prove by a preponderance of the evidence the existence of "a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." ***Kawaauhau v. Geiger***, 523 U.S. at 61 (emphasis in original). It is insufficient that a reasonable debtor "should have known" that his conduct risked injury to others. ***In re Markowitz***, 190 F.3d at 465 n.10. Rather, the debtor must "will or desire harm, or believe injury is substantially certain to occur as a result of his behavior." *Id.*

10 - U.S. Bankruptcy Court, M.D. Tenn.

Case 3:13-ap-90369    Doc 28    Filed 03/25/15    Entered 03/25/15 09:48:20    Desc Main
Document    Page 10 of 11

As discussed above, the Court finds that the plaintiff failed to show the requisite intent to make this debt nondischargeable.

### III. CONCLUSION[1]

Accordingly, the Court finds that the plaintiff's complaint should be denied and that the debt is dischargeable.

An appropriate order will enter.

**This Memorandum Opinion was signed and entered electronically as indicated at the top of the first page.**

---

[1] The debtor raises the affirmative defenses of collateral estoppel and res judicata. Based on the Court's determination that the debt to the plaintiff is dischargeable, these defenses are moot. However, the Court notes that neither argument is well founded. Collateral estoppel would not apply because the issues of fraud, conversion, or intentional injury were not considered or decided by the state court jury. Instead, the proceedings in state court proceeded on a contract theory. ***See Mullins v. State,*** 294 S.W.3d 529, 535 (Tenn. 2009) (citations omitted) (to prevail on collateral estoppel claim, issue had to be raised, litigated, and decided on merits). Moreover, the Supreme Court has ruled that res judicata does not apply to dischargeability proceedings in a bankruptcy court. ***Brown v. Felsen,*** 442 U.S. 127, 138-39 (1979).

11 - U.S. Bankruptcy Court, M.D. Tenn.

This Order has been electronically signed. The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.

Case 3:13-ap-90369    Doc 28    Filed 03/25/15    Entered 03/25/15 09:48:20    Desc Main
Document    Page 11 of 11